**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**James BOUCHER, Defendant-Appellant.**

**No. 85–2536.**

United States Court of Appeals,
Seventh Circuit.

Argued April 2, 1986.
Decided July 21, 1986.

Richard H. Parsons, Peoria, Ill., for defendant-appellant.

Michael J. O'Leary, Asst. U.S. Atty., Gerald D. Fines, U.S. Atty., Peoria, Ill., for plaintiff-appellee.

Before CUDAHY and RIPPLE, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

RIPPLE, Circuit Judge.

Appellant James Boucher appeals his conviction for conspiracy to distribute cocaine pursuant to 21 U.S.C. § 846. We affirm the judgment of the district court.

## I

In 1982, James Boucher was charged in a two-count indictment. Count one alleged conspiracy to distribute cocaine in violation of 21 U.S.C. § 846. Count two alleged that Mr. Boucher participated in the interstate transportation of controlled substances in violation of 18 U.S.C. § 1952(a)(3). The case was tried to a jury beginning on June 12, 1985. The evidence offered at trial showed the following: In 1980, Mr. Boucher was operating a legitimate log home business. In the spring of that year, he contracted to build a log home for Ed Freeze. Mr. Boucher was assisted in this construction by several individuals including Steve Purcell, Scott Soebbing and James Hughbanks. In spring 1981, Mr. Boucher and Mr. Freeze entered into an agreement whereby Mr. Freeze would raise $30,000, which Mr. Boucher would use to purchase cocaine. In late summer 1981, Mr. Freeze persuaded Carl Kleen to invest $30,000 and John DeRoo to invest $2,000 in the scheme. All but $1,000 was turned over to Mr. Boucher, who informed Mr. Freeze that he would be leaving shortly for Florida to purchase the cocaine. Meanwhile, Mr. Boucher had established a similar relationship with James Hughbanks. Mr. Hughbanks obtained $7,000 from Scott Wittmer and Julie Stolz, which was turned over to Mr. Boucher on August 25, 1981. Mr. Boucher informed Mr. Hughbanks that he was leaving immediately for Florida to complete the purchase.

Several days later, Mr. Hughbanks saw and sampled the cocaine which Mr. Boucher purportedly purchased in Florida. Mr. Boucher informed Mr. Hughbanks that he had obtained approximately one pound of cocaine. The details of the purchasing excursion to Florida were corroborated by other witnesses—Scott Soebbing and Steve Bailey—who participated in the operation. Another witness, Steve Purcell, testified that he stored cocaine at his home for Mr. Boucher.

There was additional testimony that, in November 1981, Mr. Freeze again obtained investors. Mr. Freeze obtained $10,000 from William Blocker and $3,000 from Pat Reagan. From this fund, $10,000 was turned over to Mr. Boucher. Mr. Hughbanks also invested an additional $1,500 with Mr. Boucher in December 1981.

Based on this evidence, the jury found Mr. Boucher guilty on count one—conspiracy to distribute cocaine—and not guilty on count two—interstate travel in aid of unlawful activity. On June 19, 1985, Mr. Boucher filed a motion for a new trial on count one; the motion was denied. This appeal followed.

## II

Mr. Boucher challenges his conviction on four independent grounds: (1) that the ad-

mission of certain hearsay evidence violated his due process rights; (2) that there was a variance between the conspiracy alleged and the proof at trial; (3) that the trial court erred in refusing to give a specific instruction offered by the defense; and (4) that the trial court erred in not granting the defense motion for acquittal or for new trial. We shall consider these issues separately.

### A

The evidence offered against Mr. Boucher was largely testimonial in nature. The testimony was given by other members of the conspiracy who had been granted full immunity from prosecution in exchange for their testimony. Mr. Boucher contends that the admission of the hearsay statements of his co-conspirators violated his due process rights. We disagree.

Fed.R.Evid. 801(d)(2)(E) provides that a statement is not excludable as hearsay if it is made by a co-conspirator during the course and in furtherance of the conspiracy. This court has held that, in order to meet the requirements of the rule, the government must prove, by a preponderance of independent evidence, which is not hearsay, that the conspiracy existed, that the defendant and the declarant were members of that conspiracy and that the offered statement was made during the course of and in furtherance of the conspiracy. *United States v. Santiago,* 582 F.2d 1128, 1135 (7th Cir.1978); *see United States v. Rovetuso,* 768 F.2d 809, 821 (7th Cir.1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 838, 88 L.Ed.2d 809 (1986); *United States v. Gironda,* 758 F.2d 1201, 1217 (7th Cir.), *cert. denied,* —— U.S. ——, 106 S.Ct. 523, 88 L.Ed.2d 456 (1985).

In *United States v. Andrus,* 775 F.2d 825, 836 (7th Cir.1985), the court discussed, in some detail, the methodologies which a district judge may employ in fulfilling the mandate of *Santiago.* The *Andrus* court specifically noted that the district judge "has the option of requiring the government to present a proffer of proof on the declarations and conspiracy that it will offer at trial. The court can then decide whether, if the government proves what it has proffered, the requirements of *Santiago* will be met." *Id.* at 837.

As the *Andrus* court noted, the procedure of accepting the proffer instead of holding a hearing "has the advantage of economy. Witnesses will not have to be brought in twice. The court will not spend an excessive amount of time making a determination which is only preliminary." *Id.* at 837. At the close of the evidence, "on a timely and appropriate motion," *United States v. Coe,* 718 F.2d 830, 837 (7th Cir. 1983), the district judge must determine whether the evidence admitted at trial substantiated the proffer.

In this case, counsel for Mr. Boucher requested a *"Santiago* hearing." The district judge set the hearing for the morning of trial. However, on that date, the government filed a memorandum entitled "Proffer of Proof," in which it sought to prove that the requirements of *Santiago* were met. The memorandum set forth, in some detail, the expected testimony of the alleged co-conspirators: Hughbanks, Freeze, Purcell, and Soebbing. Over counsel's objections, the district judge ruled that the hearsay statements were admissible under Fed.R.Evid. 801(d)(2)(E). The defense made no specific request directed to the *Santiago* requirement at the end of trial. In any event, our examination of the record of trial convinces us that the evidence at trial was quite sufficient to satisfy the requirements of *Santiago.*

We also find unpersuasive Mr. Boucher's attempt to distinguish the *Andrus* decision from his own case. He correctly points out that, in *Andrus,* the proffer was in the form of grand jury testimony given under oath. We do not believe, however, that this distinction is controlling. No matter what the precise form of the proffer, the district judge remains free to reconsider, upon timely and appropriate motion at the close of the evidence, whether the evidence at trial substantiates the government's earlier proffer. This later scrutiny sufficient-

ly protects, in our view, the defendant's rights under *Santiago.*

## B

■ Mr. Boucher next contends that he was charged in the indictment with participation in a single conspiracy but that the proof at trial tended to show that there were multiple conspiracies. In evaluating whether the evidence established a single conspiracy or multiple conspiracies, a reviewing court "must consider the evidence in the light most favorable to the government." *United States v. Towers,* 775 F.2d 184, 189 (7th Cir.1985) (citing *United States v. Read,* 658 F.2d 1225, 1230 (7th Cir.1981)). This court has recently had many occasions to consider whether a single conspiracy or multiple conspiracies existed. *See, e.g., United States v. Cerro,* 775 F.2d 908, 910 (7th Cir.1985); *Andrus,* 775 F.2d at 840–41; *Towers,* 775 F.2d at 189–90. In order to show that a single conspiracy existed, the government must establish that the parties to the agreement were aware that others were participating in the scheme. The co-conspirators must have "knowingly embraced a common criminal objective." *United States v. Ras,* 713 F.2d 311, 314 (7th Cir.1983). However, there is no requirement that the participants in the plan "personally know the individuals involved ... [a]s long as the conspiracy continues and its goal is to achieve a common objective." *United States v. Noble,* 754 F.2d 1324, 1329 (7th Cir.), *cert. denied,* —— U.S. ——, 106 S.Ct. 63, 88 L.Ed.2d 51 (1985) (citation omitted).

Based upon our review of the record in this case, we find that there was sufficient evidence that only one conspiracy existed. Mr. Boucher apprised both Mr. Freeze and Mr. Hughbanks that he intended to travel to Florida to purchase large quantities of cocaine and that to accomplish this end he needed substantial amounts of cash. Mr. Freeze and Mr. Hughbanks endeavored to provide Mr. Boucher with the cash base necessary to fuel the operation. That Freeze and Hughbanks testified that they did not share a common goal is not control-

ling. It is clear that both understood that Boucher was master-minding a large-scale distribution scheme. That there was only one large distribution scheme in operation is further evidenced by the co-conspirators' testimony at trial that they knew that Boucher was traveling to Florida to purchase a large quantity of cocaine.

## C

■ Mr. Boucher's next contention is that the district judge's refusal to submit his instruction on his theory of defense to the jury was reversible error. It is well-established and undisputed by the government that, "[t]he defendant in a criminal case is entitled to have the jury consider any theory of the defense which is supported by law and which has some foundation in the evidence, however tenuous." *United States v. Grimes,* 413 F.2d 1376, 1378 (7th Cir.1969). Mr. Boucher's attorney sought to have the district judge instruct the jury that:

Although the Indictment charges a single conspiracy, it would be possible to find separate conspiracies, one relating to Freeze and the other relating to Hughbanks. Whether there was one conspiracy, or two conspiracies, or no conspiracy at all is a fact for you to determine in accordance with these instructions.

I have instructed you as to the consideration of the acts and declarations of one alleged conspirator as evidence against another alleged conspirator. You will not consider any such acts or declarations against the Defendant unless you find beyond reasonable doubt that the person doing the act making the declaration was a member of the same conspiracy as was the Defendant.

R. 67. Instead, the district judge instructed the jury that:

The conspiracy alleged in Count 1 is a single, comprehensive conspiracy and that is what the government must prove. By a single, comprehensive conspiracy in the context of this case, I mean a common, shared plan, scheme, or purpose among the defendant and other partici-

pants to possess cocaine with intent to distribute it or to distribute cocaine.

It is the defendant's theory of the case that the government has not proved a single comprehensive conspiracy but has shown multiple conspiracies.

R. 68 at 20. A criminal defendant is not entitled to have his particular instruction presented to the jury; rather, he is entitled only to have his theory of defense presented to the jury. *United States v. Emalfarb,* 484 F.2d 787, 791 (7th Cir.), *cert. denied,* 414 U.S. 1064, 94 S.Ct. 571, 38 L.Ed.2d 469 (1973). It is not at all clear, on this record, that the defendant adequately preserved his objection. Tr. 286. In any event, to constitute reversible error, we would have to find that the district court's refusal to give the specific instruction requested by Mr. Boucher denied him a fair trial. *See United States v. Gray,* 751 F.2d 733, 737 (5th Cir.1985); *United States v. Thornton,* 746 F.2d 39, 50 (D.C.Cir.1984). We do not find that to be the case here. We believe that the district judge was correct when he characterized the instruction tendered by the defendant to be an "inaccurate and misleading statement of the law...." Tr. 284. *See Santiago,* 582 F.2d at 1133. The instruction given by the trial judge, when read with the other instructions given the jury, fairly presented the case.

Mr. Boucher also claims that the trial judge erred in refusing to give the following instruction: "Presence at the scene of the crime and knowledge that a crime is being committed are not sufficient to establish the Defendant's guilt." The trial judge stated that he did not "see how it is applicable to the facts of this case." Tr. 289. Upon review of the record, we believe that the trial judge was correct.

### III

█ Finally, the appellant submits that the trial court erred in not granting the motion for acquittal and motion for new trial. He notes that one of the overt acts set forth in the indictment was that Mr. Boucher traveled to Florida to purchase a quantity of cocaine. Since the jury also found him not guilty of Count two which charged him with interstate travel in aid of unlawful activity, he claims that the verdicts are inconsistent and that his conviction must fail. The short answer to this specific contention is that the overt act in question was not a necessary element of the particular conspiracy offense of which the appellant was convicted. "If an overt act need not be charged, it need not be proved." *United States v. Umentum,* 547 F.2d 987, 991 (7th Cir.1976).

With respect to the appellant's generalized assertion that the evidence is insufficient, we believe the trial judge correctly summarized the situation at the end of trial: "It all came down to who is telling the truth and who is lying, and the jury believed the government's witnesses." Tr. of Final Disposition at 14.

Accordingly, the judgment of the district court is affirmed.

AFFIRMED.