**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Donald MAZZANTI and Paul Born III,
Defendants–Appellants.**

**Nos. 88–2287, 88–2361.**

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 21, 1989.

Decided Nov. 1, 1989.

Rehearing Denied in No. 88–2361
Dec. 11, 1989.

---

Kristina M.L. Anderson, Steven A. Miller, Asst. U.S. Attys., Anton R. Valukas, U.S. Atty., Office of the U.S. Atty., and David J. Stetler, Asst. U.S. Atty., Office of the U.S. Atty., Crim. Receiving, Appellate Div., Chicago, Ill., for the U.S.

Marc R. Kadish, Chicago, Ill. and Catherine Massarell, Law Student, for Donald Mazzanti.

Before WOOD, Jr., COFFEY and KANNE, Circuit Judges.

COFFEY, Circuit Judge.

Donald Mazzanti and Paul Born III appeal their convictions on charges of conspiracy to possess with intent to distribute and to distribute cocaine in violation of 21 U.S.C. § 846, and of possession of cocaine with intent to distribute and distribution of cocaine in violation of 21 U.S.C. § 841(a)(1). We affirm.

## I. FACTUAL BACKGROUND

On February 24, 1987, Robert Blessing, while the subject of an arrest warrant issued in DuPage County, Illinois, on state charges for distribution of cocaine and other charges, turned himself in to the United States Drug Enforcement Administration ("DEA") authorities in Chicago, Illinois.[1] Blessing informed the DEA agents that he had purchased cocaine from Dan Taglia, Oscar DeLisle, and another person in the DuPage County area and agreed to cooperate and assist the DEA agents in investigating these persons.[2]

In compliance with the agreement to cooperate, Blessing contacted DeLisle in March 1987, and arranged for a cocaine buy on April 2, 1987, at the ABC Lounge in Streamwood, Illinois. On the given date, Blessing and undercover DEA Agent John Riley met DeLisle, Mazzanti and Born in the lounge. Mazzanti, DeLisle and Born conversed, and then DeLisle directed Blessing and Agent Riley to a storeroom in the lounge and handed Riley a plastic bag containing approximately two ounces of cocaine. Agent Riley gave DeLisle $3,200.

Blessing and DeLisle scheduled another cocaine deal eleven days thereafter. On April 13, DEA Agent Riley and Blessing met Mazzanti, Born and DeLisle in the parking lot of the ABC Lounge, and DeLisle informed Blessing and Agent Riley that the cocaine had to be picked up in Elgin, Illinois, and instructed them to wait in the parking lot. Later that same day, DeLisle and Born returned, and DeLisle gave Agent Riley a clear plastic bag containing approximately two ounces of cocaine in exchange for $3,200.

Blessing arranged for a third cocaine buy the following month. On May 13, Agent Riley and Blessing met DeLisle and Mazzanti at DeLisle's home, and shortly thereafter, DeLisle left to get the cocaine. Meanwhile DEA surveillance Agent Christopher Hacias observed DeLisle enter the ABC Lounge while Paul Born was observed arriving in his maroon van. Born entered the bar, and DeLisle departed, walking to Born's van where he removed a dark colored package. DeLisle next returned to his home and sold Agent Riley approximately two ounces of cocaine.

---

1. The state charges are not before this court.

2. In return for his cooperation the DEA agents stated that they would inform the state's attorney of Blessing's assistance.

On July 13, 1987, Blessing and Taglia consummated another drug transaction. Blessing, undercover Agent Riley, and a second undercover agent, Bill Maloney, met Taglia at his residence. Taglia agreed to supply $175,000 worth of cocaine for the price of $32,000 per kilogram.

Later that day, Taglia, Agent Maloney, Agent Riley and Blessing drove to Nancy's Pizzeria in Streamwood, Illinois, where they met with Mazzanti and Oscar DeLisle. During the conversation, DeLisle commented that if there was any trouble there would be a lot of "dead cops," while Taglia stated that the "DEA" agents would meet the same fate. Mazzanti and Agent Riley discussed the quality of the cocaine to be exchanged. At one point, Mazzanti left the table to make a phone call and later explained that he was trying to reach "my guy Paul."

A short time later, Paul Born arrived in the parking lot in his maroon van. At that time, Mazzanti asked Blessing for the keys to his car in order that Mazzanti might move the car and put the cocaine into the trunk. Surveillance Agent Hacias observed Born remove a large white plastic pail from the van and next observed Mazzanti transfer the pail into the trunk of Blessing's car. Mazzanti returned to the restaurant and returned the keys to Blessing. Thereafter, Blessing went outside, tasted the cocaine, and informed Riley and Maloney that the cocaine was suitable. Agent Riley and Taglia went to the parking lot to exchange the money, and DEA agents arrested all of the defendants. The DEA agents, in searching Blessing's car after the arrests, came upon the white pail containing approximately twelve pounds of cocaine. DEA agents also searched Born's van and found a telephone paging device, a .357 magnum pistol, and three bags containing cocaine.

The defendants were each charged with one count of conspiracy to possess with intent to distribute and to distribute cocaine, in violation of 21 U.S.C. § 846; and four counts of possession of cocaine with intent to distribute and distribution of cocaine, in violation of 21 U.S.C. § 841(a)(1).

When the jury trial commenced, Born's counsel, in his opening statement, argued that Born was not involved in any of the drug deals but was mistaken for one of two other men who resembled him and frequented the ABC Lounge. Born's counsel also argued that the cocaine deals were the product of a motorcycle gang called the Brothers and that Mazzanti was a member of the gang, but Born was not. At trial, Born attempted to place the responsibility for the cocaine transactions on the motorcycle gang. The trial court ruled that the testimony was irrelevant and inadmissible. After Born's counsel had made reference to a motorcycle gang, Mazzanti moved for a severance, arguing that the comments of Born's counsel were evidence of the defendants' mutually antagonistic defenses. The district court, upon consideration of the motion, denied the same.

Born in his testimony explained that he owned a maroon van and that DeLisle and Mazzanti kept their work tools in his van. Born further stated that he was at or near the locations of the cocaine sales on at least two of the dates charged but denied involvement in the cocaine transactions or the drug conspiracy. The government cross-examined Born as to whether he discussed the cocaine purchases with DeLisle and also inquired whether he used the term "two Z's" of cocaine in a discussion with DeLisle. Born denied making any statement or having had any discussion regarding "two Z's." The government then inquired whether Born knew the meaning of the term "two Z's" of cocaine—he denied any knowledge of the term. In rebuttal, the government, over Born's objection, introduced the testimony of Detective John Mueller, an Illinois police officer, who testified that he had a conversation with Born in which they discussed the purchase of cocaine and that when the detective used the term "Z's" of cocaine in reference to ounces of cocaine, Born appeared to understand the meaning of the term.

At the close of the evidence, Mazzanti proferred a multiple conspiracy instruction, but the district court rejected the instruc-

tion, finding that there was no evidence of a multiple conspiracy.

On April 29, 1987, the jury found Mazzanti and Born guilty of the cocaine-related charges.[3] Mazzanti was sentenced to a twelve-year prison term and five years of supervised release. Born was sentenced to a twenty-three year prison term and ten years of supervised release.

Born on appeal alleges that: (1) the district court erred in excluding evidence regarding the alleged motorcycle gang and Born's denial of his membership in it; (2) the district court committed reversible error in admitting Detective Mueller's testimony regarding Born's knowledge of drug transactions. Mazzanti alleges on appeal that the district court erred in denying Mazzanti's motion for severance. Also, both Mazzanti and Born allege that the trial court erred in failing to give the jury a multiple conspiracy instruction.

## II. EXCLUSION OF EVIDENCE

Born contends that the district court erred in refusing to allow him to testify that a motorcycle gang was involved in the drug conspiracy. Born, even though never a member of the motorcycle gang and thus without any personal knowledge of the gang's self-enforced rules, argues that evidence concerning the other defendants' motorcycle gang membership was relevant to his defense since motorcycle gang members do not include non-members in their drug transactions. Born further contends that the evidence would have assisted him in his mistaken identity defense as he alleged that two motorcycle gang members resembled him. Because Born contends that this evidence was relevant for these two separate reasons, we shall discuss each relevancy contention individually.

Born "carries a heavy burden on appeal because an evidentiary ruling will be reversed only if a trial court committed *'a clear abuse of discretion.'"* Jones v. Hamelman, 869 F.2d 1023, 1027 (7th Cir.1989) (quoting *Bohannon v. Pegelow*, 652 F.2d 729, 732 (7th Cir.1981)) (emphasis added in

*Jones* ). As we stated in *United States v. Kaden*, 819 F.2d 813, 818 (7th Cir.1987), "a ... reviewing court gives special deference to the evidentiary rulings of the trial court."

"Evidence which is not relevant is not admissible." Fed.R.Evid. 402. "Evidence is relevant if it has 'any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.' Fed.R. Evid. 401." *United States v. Amaro*, 816 F.2d 284, 286 (7th Cir.), *cert. denied*, 481 U.S. 1031, 107 S.Ct. 1961, 95 L.Ed.2d 532 (1987).

■ Born's initial contention is that the evidence concerning motorcycle gang membership was relevant to his defense because even though it might conceivably be possible for non-gang members to be involved in the cocaine transactions, it was more likely than not that a motorcycle gang would not allow non-members to participate in its drug deals. The district court noted that Born was not competent to testify to the machinations of the gang as he lacked personal knowledge of these matters since he was not a member of the group. Further, Born failed to offer the testimony of any motorcycle gang members concerning the operations of the motorcyclists nor did he proffer any evidence concerning the motorcycle gang's drug selling practices that would support his defense that he was not a participant in the alleged cocaine transactions.

■ As to the use of the motorcycle gang evidence to support Born's mistaken identity defense, we note initially that Born was allowed to introduce evidence on this defense. He was prevented only from bolstering this argument with other extraneous evidence concerning the motorcycle gang which the trial court excluded on grounds of relevance. Further, as discussed earlier, on the drug sales issue, the court reasoned that Born was not competent to testify as to the machinations of the motorcycle gang, nor did he proffer the

---

**3.** Born was charged but acquitted of possession of handgun during and in relation to a felony.

testimony of any person who would be able to give such testimony. Because Born failed to proffer any evidence concerning the motorcycle gang's operations that would even remotely support his argument that he was not involved in the cocaine transactions or his mistaken identity defense, we are convinced that the district court's ruling excluding evidence of the motorcycle gang on relevancy grounds was not a "clear abuse of discretion."

■ In connection with each of his relevancy contentions, we note that "[a]ny error, defect, irregularity or variance which does not affect substantial rights shall be disregarded." Fed.R.Crim.P. 52(a). As this court observed in *United States v. Green,*

> " 'Substantial right,' the language of harmless error, calls for an inquiry into whether the mistake 'had substantial and injurious affect or influence in determining the jury's verdict.' *Kotteakos v. United States,* 328 U.S. 750, 776, 66 S.Ct. 1239, 1253, 90 L.Ed. 1557 (1946). Unless the error creates a significant risk of convicting an innocent person, it should be disregarded. [citation omitted] No trial is perfect, and a direction to hold another is an invitation to further error and still further proceedings.
>
> We must compare the conduct of [a] trial not against the hypothetical perfect trial, but against a plausible future trial, beset with the sort of errors that infect almost all trials."

786 F.2d 247, 252–53 (7th Cir.1986).

There was overwhelming evidence of Born's guilt including his personal presence and the presence of the maroon van (registered to Born) at the drug buys on May 13, 1987, and July 13, 1987. Furthermore, during the July 13, 1987, transaction, Born was observed carrying the pail (containing twelve pounds of cocaine) which was later discovered in Blessing's car. Also, after the arrests were made following the July 13, 1987, drug deal, three bags of cocaine and a telephone pager, an item commonly used during drug transactions, were discovered in Born's van. It should be noted that Born was not only permitted to introduce evidence that others who frequented the ABC Lounge resembled him in physical and personal characteristics, but the district court also gave the mistaken identity jury instruction. Our review of the record convinces us that there was overwhelming evidence presented to the court of Born's guilt, and thus the exclusion of the evidence regarding motorcycle gang membership did not have a "substantial and injurious effect or influence in determining the jury's verdict." In short, on appeal we refuse to disturb the trial court's ruling excluding Born's testimony concerning motorcycle gang membership.

## III. OTHER ACTS EVIDENCE

■ Next Born contends that the trial court erred in admitting the government's rebuttal testimony of Detective John Mueller concerning Born's discussion of possible cocaine purchases in February and April of 1986 and Born's apparent understanding of the use of the term "Z" of cocaine during these discussions.

In reviewing decisions to admit evidence, "we shall 'reverse the decision of the trial court only for abuse of discretion.' *United States v. Byrd,* 771 F.2d 215, 219 (7th Cir. 1985)." *United States v. Zapata,* 871 F.2d 616, 621 (7th Cir.1989). The admissibility of "other acts" evidence is governed by Federal Rule of Evidence 404(b) which provides:

> "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

In this circuit, other acts evidence is admissible if it meets the requirements of a four-part test. Specifically, the district court must determine whether:

> "(1) The evidence is directed towards establishing a matter in issue other than the defendant's propensity to commit the crime charged, (2) the evidence shows that the other act is similar enough and close enough in time to be relevant to the

matter in issue, (3) the evidence is sufficient to support a jury finding that the defendant committed the similar act, and (4) the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice."

*United States v. Zapata*, 871 F.2d 616, 620 (7th Cir.1989).

Born argues that the court's decision to admit Detective Mueller's testimony was error because the government represented before trial that it would not introduce evidence of other acts in its case in chief and because Born did not place his intent in issue during his testimony. On the other hand, the government argues that the evidence was properly received for the purposes of demonstrating knowledge and intent.

Initially, we note that the government lived up to its agreement and did not introduce other acts evidence against Born in its case in chief. It was only after he denied any involvement in the charged drug conspiracy during his defense that the government presented Detective Mueller's testimony in its rebuttal case.

The government's use of other acts evidence on rebuttal in these circumstances is supported in this court's decision in *United States v. Chaimson*, 760 F.2d 798, 806 (7th Cir.1985). In that case, the defendant, Samuel Chaimson, was charged with several counts of the specific intent crime of mail fraud. In his defense, Chaimson took the stand and denied any involvement or knowledge of the crimes charged. In its rebuttal case, the government introduced evidence of other acts. On appeal, Chaimson argued "that the Government's failure to introduce the 'other acts' evidence in its case in chief, coupled with the fact that the defense never challenged the intent element, preclude[d] the Government from introducing such evidence in its rebuttal case." *Id.* at 806. We disagreed, stating:

"The intended effect of Chaimson's absolute and unequivocal denial was to negate completely the Government's proof, including the proof that Chaimson acted with intent to defraud. In view of Chaimson's blanket denial of any wrongdoing, and the fact that such a denial was meant to nullify any evidence of intent, it was certainly proper for the Government to overcome the defendant's absolute denial and reestablish the element of intent, in its rebuttal case, with the introduction of [other acts evidence]."

*Id.* at 806.

The first count of the indictment charged Born with conspiracy to distribute cocaine. "[C]onspiracy to distribute is a specific intent crime; the government shows that the defendant conspired to distribute with intent to distribute a controlled substance, in order to prove guilt." *United States v. Monzon*, 869 F.2d 338, 344 (7th Cir.), *cert. denied,* — U.S. —, 109 S.Ct. 2087, 104 L.Ed.2d 650 (1989). "In cases involving specific intent crimes, intent is automatically an issue, regardless of whether the defendant has made intent an issue in the case." *Monzon* at 344. Although Born conceded that he was at or near the locations where the cocaine sales occurred on at least two of the charged dates, he denied any involvement in the drug conspiracy or the distribution of cocaine on April 2, April 13, May 13 or July 13, 1987. Born's blanket denial of any wrongdoing, as in *Chaimson*, was meant to negate any evidence of intent. Therefore, it was proper for the court to allow the government, in its rebuttal, to overcome Born's absolute denial and reestablish the element of intent. Thus, we hold that Detective Mueller's testimony was directed toward establishing intent and satisfied the first part of the Zapata four-part test.[4]

**4.** Born contends that he did not place his intent in issue when he testified that he did not understand the meaning of "Z's" of cocaine, arguing that the prosecutor did not have a good faith basis for asking the initial question of whether the term was used in a discussion between DeLisle and him. We need not address this contention since we have determined that Detective Mueller's testimony was admissible in the government's rebuttal case based on Born's blanket denial of wrongdoing and without any reference to the defendant's statements concerning the term "Z's" of cocaine.

Born further contends that the probative value of Detective Mueller's testimony was outweighed by the danger of unfair prejudice. We disagree for the evidence was probative of Born's knowledge and intent, and, further, the danger of unfair prejudice was minimized by the district court's instruction to the jury that the evidence should be considered only as to Born's intent and knowledge. "Because the defendant has presented no evidence to convince us otherwise, '[w]e make the crucial and valid assumption that the jurors carefully follow instructions given to them by the court.'" *United States v. Shukitis*, 877 F.2d 1322, 1329 (7th Cir.1989) (quoting *United States v. Stern*, 858 F.2d 1241, 1250 (7th Cir.1988)). Thus, the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice. Accordingly, we hold that the trial court did not abuse its discretion in admitting evidence of Born's discussions with Detective Mueller.[5]

## IV. MOTION FOR SEVERANCE

Mazzanti contends that the trial court improperly denied his motion for severance asserting that Born's defense prejudiced Mazzanti's ability to receive a fair trial. Specifically, Mazzanti argues that he was prejudiced when Born's counsel made certain remarks in his opening statement and when Born attempted to testify concerning a motorcycle gang. Born's counsel argued, in his opening statement, that a motorcycle gang was responsible for the drug transactions and that Mazzanti was a member of the gang. Born also sought to testify regarding the motorcycle gang, but the district court sustained the government's and Mazzanti's objections to this testimony.

In *United States v. Turk*, 870 F.2d 1304, 1306 (7th Cir.1989), we recently summarized the law we apply to the review of a district court's severance decision when mutually antagonistic defenses are alleged:

"Pursuant to Rule 14 of the Federal Rules of Criminal Procedure, a district court may grant severance if codefendants assert mutually antagonistic defenses. *United States v. Goudy*, 792 F.2d 664, 673 (7th Cir.1986). Defenses are mutually antagonistic only where acceptance of one defendant's position precludes the acquittal of the other defendant. *United States v. Rollins*, 862 F.2d 1282, 1289 (7th Cir.1988). There is a 'strong public interest in having persons jointly indicted tried together, especially where the evidence against the defendants arose out of the same acts or series of acts.' *United States v. Oxford*, 735 F.2d 276, 280 (7th Cir.1984). We will, therefore, reverse a district court's decision on severance motion only upon a showing that the court abused its discretion, *Rollins*, 862 F.2d at 1289; *United States v. Bruun*, 809 F.2d 397, 407 (7th Cir.1987), and limit review to the state of the record at the time the motion was made. *Rollins*, 862 F.2d at 1289."

Mere inconsistency alone is insufficient to find co-defendants' defenses mutually antagonistic. "Unless the defenses are so inconsistent that the *making* of a defense by one party will lead to an unjustifiable inference of another's guilt, or unless the acceptance of a defense *precludes* acquittal of the other defendants, it is not necessary to hold separate trials." *United States v. Buljubasic*, 808 F.2d 1260, 1263 (7th Cir.), *cert. denied*, 484 U.S. 815, 108 S.Ct. 67, 98 L.Ed.2d 31 (1987). However, even if defenses are not mutually antagonistic, "[s]everance can be granted if the actual

---

5. As to the third part of the other acts evidence test, concerning the strength of the other acts evidence, Born argued that Detective Mueller's testimony was not "clear and convincing" citing *United States v. Tuchow*, 768 F.2d 855, 862 (7th Cir.1985). The government correctly pointed out that the Supreme Court recently lightened this burden in *Huddleston v. United States*, 485 U.S. 681, 108 S.Ct. 1496, 1499, 99 L.Ed.2d 771 (1988). ("[S]uch evidence should be admitted if

there is sufficient evidence to support a finding by the jury that the defendant committed the similar act.") In Born's reply brief, he makes no argument relating to this lower standard. Nevertheless, in reviewing the record, we are convinced that Detective Mueller's testimony was more than sufficient to support a jury verdict that Born took part in the conversation with the detective.

conduct of one defendant's defense unduly prejudices his or her co-defendant." *United States v. Rollins*, 862 F.2d 1282, 1290 (7th Cir.1988).

The initial issue is whether Mazzanti's and Born's defenses were mutually antagonistic. In *United States v. Gironda*, 758 F.2d 1201, 1220 (7th Cir.), *cert. denied*, 474 U.S. 1004, 106 S.Ct. 523, 88 L.Ed.2d 456 (1985), this court addressed the question of when defenses are mutually antagonistic. In *Gironda*, defendant Heckens moved for a mistrial or a severance on the ground that defendant Gironda's opening statement implied that Heckens was guilty. *Id.* at 1220. Gironda argued that he was innocent of any conspiracy that might have occurred. Heckens argued that the Government failed to prove its case against him. In affirming the district court's decision to deny severance, we noted, "the jury here could have accepted both Gironda's defense that he did not participate in the scheme and Heckens' defense that the Government failed to prove all of the elements of the crime of conspiracy." *Id.* at 1220.

The factual situation in this case is very similar to that in *Gironda*. Born argued that he was a victim of mistaken identity and that he had nothing to do with the drug deals. This defense did not preclude Mazzanti's similar defense that he also was not a participant. Further, no evidence was admitted concerning the motorcycle gang, and thus the jury could not properly have drawn inferences based upon such evidence. As in *Gironda*, Born's and Mazzanti's defenses were not mutually antagonistic.

■ The next issue is whether the actual conduct of Born's defense prejudiced Mazzanti. "This ground for severance ... depends on a careful evaluation of the facts elicited, prejudicial tendencies, and the entire course of the trial prior to the challenged conduct." *United States v. Ziperstein*, 601 F.2d 281, 286 (7th Cir.), *cert. denied*, 444 U.S. 1031, 100 S.Ct. 701, 62 L.Ed.2d 667 (1979). Moreover,

"The defendant bears the burden of demonstrating undue prejudice resulting from the joint trial. To meet this burden, [Mazzanti] must establish that the joint trial was unfair, not merely that [he] would have had a better chance at acquittal if [he] had been tried separately. Finally, we cannot reverse the district court's denial of a severance motion based on a claim of undue prejudice absent an abuse of discretion."

*Rollins*, 862 F.2d at 1290 (citations omitted).

Although Born's counsel made reference to a motorcycle gang in his opening statement, the court gave the usual instruction that the arguments of counsel were not evidence and that the jury should decide the case based on the evidence introduced at trial. Furthermore, evidence of Mazzanti's alleged motorcycle gang membership was not admitted since the government's and Mazzanti's objections on the grounds of relevance were sustained; therefore, the jury could not properly have drawn any inferences. Therefore, Mazzanti has failed to demonstrate that he suffered such undue prejudice as to render the joint trial unfair. Thus, we hold that the district court properly exercised its discretion in denying Mazzanti's motion for severance on the grounds of either mutually antagonistic defenses or undue prejudice.

## V. MULTIPLE CONSPIRACY INSTRUCTION

■ Mazzanti and Born both contend that the district court committed reversible error in refusing to give a proposed jury instruction offering the jury the option of finding a number of smaller conspiracies as an alternative to finding a single conspiracy. Mazzanti and Born argue that the evidence presented at trial "showed the possibility of two conspiracies." They contend that one conspiracy "may have consisted of DeLisle, Born, and Mazzanti" and a second conspiracy consisted of Taglia and two other persons charged in the indictment. Mazzanti and Born assert that the DeLisle conspiracy may have been responsible for the drug sales of April 2, April 13 and May 13 while the Taglia conspiracy may have been responsible for drug deals

on April 21, May 21 and July 13. The April 21 and May 21 drug buys were in the indictment, but only persons other than Mazzanti and Born were charged with these events.

In our review of the trial judge's refusal to give the multiple conspiracy instruction we recognize that a "trial court does not err in refusing to give a multiple conspiracy instruction if the evidence does not warrant such an instruction." *United States v. Towers*, 775 F.2d 184, 189 (7th Cir.1985). As this court stated in *Towers*, 775 F.2d at 189:

> "A reviewing court determining whether the evidence established a single conspiracy or multiple conspiracies must consider the evidence in the light most favorable to the government. *United States v. Read*, 658. F.2d 1225, 1230 (7th Cir. 1981). To determine whether a single or multiple conspiracy existed, the court must look to the nature of the agreement. *United States v. Kendall*, 665 F.2d 126, 136 (7th Cir.1981). 'If the persons joined together to further one common design or purpose, a single conspiracy exists.' *Id.*"

"As long as a common goal is being furthered, a person 'can be part of a common enterprise without being indispensable to that enterprise; and a common enterprise for illegal ends is a conspiracy whose inessential as well as essential members are conspirators.'" *United States v. Whaley*, 830 F.2d 1469, 1475 (7th Cir.1987), *cert. denied*, — U.S. ——, 108 S.Ct. 1738, 100 L.Ed.2d 202 (1988) (quoting *United States v. Cerro*, 775 F.2d 908, 914 (7th Cir.1985)).

The evidence at trial established that on July 13, 1987, Mazzanti and Born, as well as DeLisle and Taglia, were actively involved in the sale of twelve pounds of cocaine. On that day, Blessing, the informant, and undercover DEA agents Riley and Maloney met with Taglia and were joined by Mazzanti and DeLisle. During a meeting DEA Agent Riley inquired whether the quality of the cocaine was going to be good, and Mazzanti responded that Agent Riley would be very happy. At one point Mazzanti got up to make a phone call

and when he hung up the phone, DEA Agent Maloney queried when the deal would be completed. Mazzanti responded, "I'm trying to get a hold of my guy Paul." Shortly after this conversation, Paul Born arrived in his maroon van and exited the same van carrying a white pail containing the cocaine. Later, Mazzanti was observed placing the white pail containing cocaine in the trunk of Blessing's car.

The July 13, 1987, transaction demonstrates that Born and Mazzanti shared the common goal of selling cocaine for profit with the other co-conspirators. The July 13, 1987, transaction was overwhelming evidence of a conspiracy with a single goal. Further, Mazzanti and Born's activities concerning the April 2, April 13 and May 13, 1987, drug deals demonstrate that the defendants were in contact with DeLisle and Taglia and were actively involved in the sale of cocaine on these dates. Also, after both the April 2 and May 13 cocaine buys, Taglia, in conversations with Blessing, commented that he was aware of these cocaine buys. Last, DeLisle was present at each of the drug transactions in which Born and Mazzanti were charged. Thus, viewing this evidence in the light most favorable to the government, we agree with the district court that Mazzanti and Born's activities established one single ongoing conspiracy rather than multiple conspiracies.

As for the April 21 and May 21 drug deals, the only evidence introduced at trial occurred when Mazzanti's counselor attempted to cross-examine informant Blessing concerning these cocaine transactions. The counselor inquired whether Taglia and two other persons were the only ones involved in those transactions. Mazzanti's counsel was the only one who sought inquiry into the area, and Mazzanti and Born were not charged with these April 21 and May 21 offenses. Thus, we hold that the evidence did not warrant a multiple conspiracy instruction, and the trial court's rejection of the proferred instruction was proper.

## VI. CONCLUSION

The defendants' arguments in favor of reversing their convictions are without merit. The district court properly excluded Born's evidence concerning motorcycle gang membership as he did not present sufficient factual foundation for the district court to find the evidence concerning a motorcycle gang to be relevant. Further, the trial court properly admitted evidence of Born's knowledge of cocaine transactions. The evidence was admissible under Fed.R.Evid. 404(b) and met the requirements of the four-part test as stated in *Zapata*, 871 F.2d at 624.

Mazzanti has failed to demonstrate prejudice resulting from his joint trial with Born. No evidence was admitted concerning Mazzanti's alleged membership in the motorcycle gang. Thus, the district court properly exercised its discretion in rejecting Mazzanti's severance motion. Furthermore, the district court properly instructed the jury as to a single conspiracy. The evidence at trial supported the district court's finding that a multiple conspiracy instruction was not warranted. Therefore, the convictions of Mazzanti and Born are AFFIRMED.