985 F.2d 901
 UNITED STATES of America, Plaintiff-Appellee,
v.
Jerome Erick MARSHALL, also known as Eric Marshal, also
known as Trevon, also known as Lionel Leonard
Benford, also known as Lamar Roosevelt,
and Mondo Elliot, Defendants-Appellants.
 Nos. 91-3366, 91-3367.
 United States Court of Appeals,
Seventh Circuit.
 Argued Dec. 2, 1992.
Decided Feb. 3, 1993.
 
 1
 Cale J. Bradford (argued), Office of the U.S. Atty., Indianapolis, IN, for U.S.
 
 
 2
 Reginald Bishop (argued), Roberts & Bishop, Indianapolis, IN, for Mondo Elliott.
 
 
 3
 Joseph F. Walsh, Douglas L. Young (argued), Los Angeles, CA, for Jerome E. Marshall.
 
 
 4
 Before MANION and KANNE, Circuit Judges, and WILL, Senior District Judge.*
 
 
 5
 WILL, Senior District Judge.
 
 
 6
 This case involves a consolidated appeal from a criminal case in which two defendants were convicted of multiple counts of a superseding indictment. For the reasons articulated below, we affirm the rulings of the district court.
 
 I.
 BACKGROUND
 
 7
 In Los Angeles, California, from late 1989 to 1991, cocaine was distributed to defendant Jerome Erick Marshall on at least 12 to 15 occasions. With the assistance of defendant Mondo Elliot and others, Marshall manufactured part of the cocaine into cocaine base (commonly known as "crack cocaine"). The remaining cocaine was placed in small appliances or baby stroller boxes and was shipped by Marshall, Elliot, and others to Indianapolis, Indiana. The cocaine base was similarly packaged and was shipped elsewhere. As part of his drug business, Marshall directed the activities of certain individuals located in various cities, including Indianapolis; Minneapolis, Minnesota; Washington, D.C.; and Pittsburgh, Pennsylvania. Marshall, Elliot, and others established or attempted to establish contacts in these and other cities by meeting with individuals who possessed knowledge of the local cocaine market in each city.
 
 
 8
 In 1989, Elliot and at least two others travelled from Los Angeles to Minneapolis, where they sold cocaine, collected money from the sale of cocaine, and routinely wire transferred large amounts of United States currency to California. Marshall visited Elliot and the others while they resided in Minneapolis. In 1990, Marshall directed several of his contacts to Indianapolis for the purpose of receiving and distributing cocaine. Between September 1989 and April 1990, Marshall directed the shipment of at least 15 kilograms of cocaine to contacts in Indianapolis. At the direction of Marshall and Elliot, United States currency derived from the sale of such cocaine was shipped inside small appliance boxes and wire transferred via Western Union to Marshall and Elliot (and their designates) in California. Marshall directed the individuals that he sent to Indianapolis to acquire handguns for him. Under Marshall's direction, a local contact in Indianapolis also purchased numerous handguns in her own name and sent most of them to Marshall in California. In April 1990, Marshall attempted to purchase in person a number of handguns from an Indianapolis gun dealer. At his request, the transactions were to be conducted through one of his local Indianapolis contacts. On April 24, 1990, Marshall's local contacts sold three ounces of cocaine in Room 722 at the Residence Inn in Indianapolis. During a search of the room on the following day, three handguns and a quantity of suspected cocaine were seized.
 
 
 9
 In 1991, the defendants were tried before a jury on a five-count Superseding Indictment, which charged Marshall and Elliot with conspiracy to possess with the intent to distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 846 (Count I), and conspiracy to commit money laundering in violation of 18 U.S.C. §§ 1956(a)(1)(B)(i) and 371 (Count V). Counts II and IV charged Marshall alone with violations of 18 U.S.C. §§ 922(g)(1) and 924(e), and 18 U.S.C. §§ 922(a)(6) and 371 respectively. Marshall was acquitted of Count III. On July 19, 1991, Marshall was found guilty as charged in Counts I, II, IV, and V. On the same date, Elliot was found guilty as charged in Counts I and V. On September 30, 1991, Marshall was sentenced to life in prison and Elliot was sentenced to 327 months in prison.
 
 
 10
 Both defendants now appeal from their respective convictions. In his brief, defendant Marshall presents 18 questions for appellate review. In his brief, defendant Elliot raises six issues for our review. Because many of the issues raised by the defendants in their briefs are sufficiently meritless to command summary affirmation, we will limit our discussion to the following six issues on which defendants' counsel focused during oral argument.
 
 II.
 ANALYSIS
 A. Insufficiency of the Evidence
 
 11
 Both defendants have challenged the sufficiency of the evidence on which they were convicted. The issue of sufficiency of the evidence is reviewed in a light most favorable to the government to determine whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." United States v. Tanner, 941 F.2d 574, 586 (7th Cir.1991), cert. denied, --- U.S. ----, 112 S.Ct. 1190, 117 L.Ed.2d 432 (1992) (quoting Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979)) (emphasis in original). Since a jury verdict must be sustained if there is substantial evidence supporting it, a defendant challenging the sufficiency of the evidence faces a heavy burden. Id.
 
 
 12
 Viewing the evidence in the light most favorable to the government and drawing all reasonable inferences from the evidence presented, we must conclude that a reasonable jury could find both Marshall and Elliot guilty as charged in Counts I and V, and Marshall guilty as charged in Counts II and IV. From the verdict, it appears that the jury simply did not believe the testimony of witness Vernon Woods when he testified that he had not been involved in a conspiracy to distribute cocaine with Marshall and Elliot.
 
 
 13
 The evidence against Marshall is abundant. It establishes that Marshall purchased large quantities of cocaine in Los Angeles, packaged and shipped the cocaine to Minneapolis and Indianapolis, established contacts to assist in cocaine distribution, and directed the pricing of cocaine. The evidence also reveals that Marshall directed others to wire transfer and ship the proceeds of cocaine sales, received wire transferred and shipped proceeds, directed others to acquire firearms on his behalf, and financially backed the straw purchase of firearms without filing federally required forms. The evidence against Elliot is equally abundant. It establishes that Elliot participated in the packaging and shipping of large quantities of cocaine from Los Angeles to Minneapolis and Indianapolis, travelled to Minneapolis to distribute cocaine, attempted to establish contacts in Cleveland, Ohio for cocaine distribution, and collected money from the distribution of cocaine.
 
 
 14
 Both defendants contend that the evidence presented failed to establish that the substance about which several witnesses testified was actually cocaine. The defendants argue that where there is no actual seizure of the controlled substance, the government has the burden of establishing that the person testifying has had experience with the controlled substance, has actually used the controlled substance in question, and believed it to be a particular controlled substance. United States v. Walters, 904 F.2d 765, 770 (1st Cir.1990); United States v. Roman, 728 F.2d 846, 859 (7th Cir.), cert. denied, 466 U.S. 977, 104 S.Ct. 2360, 80 L.Ed.2d 832 (1984); United States v. Murray, 753 F.2d 612, 615 (7th Cir.1985); United States v. Crisp, 563 F.2d 1242, 1244 (5th Cir.1977); United States v. Meeks, 857 F.2d 1201, 1204 (8th Cir.1988); United States v. Blanton, 884 F.2d 973, 977 (7th Cir.1989). However, the testimony presented at trial regarding the purchase price of the substance, the covert actions related to the substance, and the witnesses' familiarity with cocaine constitutes proper circumstances on which the identity of a controlled substance may be established. Roman, 728 F.2d at 859.
 
 
 15
 The defendants further argue that the government failed to prove that a conspiracy or agreement existed. To establish conspiracy with the intent to distribute, the government need only establish that there was an agreement between two or more persons to commit these crimes. United States v. Lamon, 930 F.2d 1183, 1190 (7th Cir.1991). To establish conspiracy to make straw purchases of firearms and conspiracy to commit money laundering, the government need only establish that there was an agreement between two or more persons to commit these crimes and that one overt act was committed. United States v. Yamin, 868 F.2d 130 (5th Cir.), cert. denied, 492 U.S. 924, 109 S.Ct. 3258, 106 L.Ed.2d 603 (1989). Moreover, this court has recognized that circumstantial evidence may be the sole support of a conspiracy conviction. Lamon, 930 F.2d at 1190-91; United States v. Durrive, 902 F.2d 1221, 1229 (7th Cir.1990). Therefore, contrary to his assertions, direct evidence of Elliot's presence in Indianapolis is not essential to his conspiracy convictions. Also, it is well established that a defendant need not be aware of all the details of the conspiracy in order to be a co-conspirator. Blumenthal v. United States, 332 U.S. 539, 556, 68 S.Ct. 248, 256, 92 L.Ed. 154 (1947).
 
 B. Improper Use of the Indictment
 
 16
 Both defendants argue that they were denied a fair trial as a result of the prejudicial surplusage of the indictment and its misuse before the jury. However, neither defendant filed a motion under Federal Rule of Criminal Procedure 7(d) requesting the trial court to strike the alleged surplusage. Moreover, neither defendant objected at trial either to the reading of the indictment before the jury or to the jury being provided with a copy of the indictment during their deliberations. Accordingly, our standard of review is plain error. United States v. Langer, 962 F.2d 592, 597 (7th Cir.1992).
 
 
 17
 Within the discretion of the court, surplusage may be stricken from the indictment if the court finds the language to be immaterial, irrelevant, or prejudicial. United States v. Andrews, 749 F.Supp. 1517, 1518 (N.D.Ill.1990); United States v. Reliable Sheet Metal Workers, 705 F.2d 461 (7th Cir.), cert. denied, 462 U.S. 1134, 103 S.Ct. 3116, 77 L.Ed.2d 1370 (1983). The indictment in this case, which is 25 pages long and alleges that the defendants had committed 94 overt acts, was read to the jury during opening argument and later given to them during their deliberations. However, close examination of the indictment reveals that the language utilized is neither inflammatory nor prejudicial. The language of the indictment can hardly be characterized as immaterial since it delineates with great specificity the numerous charges alleged by the government against each defendant. United States v. Hubbard, 474 F.Supp. 64 (D.D.C.1979), cited by the defendants, may be distinguished from this case on its facts. Moreover, the district court instructed the jury that the indictment was not evidence and that guilt or innocence had to be determined only upon the evidence presented in the case. Accordingly, there was no prejudice. See Lowther v. United States, 455 F.2d 657 (10th Cir.), cert. denied, 409 U.S. 857, 93 S.Ct. 139, 34 L.Ed.2d 102 (1972).
 
 C. Ineffective Assistance of Counsel
 
 18
 Defendant Marshall has asserted a claim of ineffective assistance of counsel. Ordinarily, we will not review a claim of ineffective counsel when, as here, it is raised initially on appeal. Langer, 962 F.2d at 597; United States v. Limehouse, 950 F.2d 501, 503 (7th Cir.1991), cert. denied, --- U.S. ----, 112 S.Ct. 1962, 118 L.Ed.2d 563 (1992). We will review the issue of ineffective assistance of counsel raised initially on appeal only where the issue is sufficiently clear-cut. Langer, 962 F.2d at 597. Reversal on this issue is only merited upon a showing that there exists a reasonable probability that but for the errors of counsel, the result of the proceedings would have been different. Strickland v. Washington, 466 U.S. 668, 689, 104 S.Ct. 2052, 2065, 80 L.Ed.2d 674 (1984). Moreover, the court begins its review with a presumption that the defendant received reasonable professional assistance. Id.
 
 
 19
 Marshall was represented by a public defender who was appointed to represent him and who had been preparing for the trial for some time. In addition, Marshall was represented by private counsel who arrived the day before trial. The record reveals that both attorneys made numerous objections throughout the trial and cross-examined at length the government witnesses. Contrary to Marshall's contention, it appears that both Marshall and his attorneys were aware that he faced life imprisonment if convicted on Count I. The fact that Marshall's counsel stated at sentencing that he thought his client had only one prior drug-related conviction does not suggest otherwise. Since Marshall has thus failed to present a clear-cut case for ineffective assistance of counsel, we will not review this issue on direct appeal.
 
 
 20
 D. Prejudicial Variance Between the Indictment and Evidence
 
 
 21
 The defendants also allege deprivation of a fair trial due to a prejudicial variance between the indictment and the proof offered at trial. A variance arises when the facts provided by the government at trial differ from those contained in the indictment. United States v. Townsend, 924 F.2d 1385, 1389 (7th Cir.1991). The defendants correctly point out that a conviction must be reversed if the variance between the indictment and the proof affects the substantial rights of the parties. United States v. Durades, 607 F.2d 818, 819 (9th Cir.1979).
 
 
 22
 According to Townsend, 924 F.2d at 1389, a variance claim "amounts to a challenge to the sufficiency of the evidence supporting the jury's finding that each defendant was a member of the same conspiracy." The standard of review is thus the same as that for the review of a sufficiency claim. The issue is whether there exists a variance in proof at trial from the indictment, and if so, whether the variance is fatal because it involves a significant element of the crime charged. See United States v. Auerbach, 913 F.2d 407, 411 (7th Cir.1990).
 
 
 23
 The defendants allege that although the indictment charged that powder cocaine was sold in Indianapolis and Minneapolis, the evidence at trial established that there existed two conspiracies: one to sell powder cocaine in Indianapolis, and one to distribute crack cocaine in Minneapolis. They argue essentially that this factual variance significantly prejudiced them at trial. Their argument of prejudicial variance is without merit. First, it is not clear, as the defendants suggest, that the indictment charges the defendants only with the distribution of powder cocaine. Second, any variance which does exist cannot be said to have been prejudicial because both Marshall and Elliot would be considered members of both the powder and crack cocaine conspiracies. Where a variance is shown to exist from the indictment and the evidence, the variance is harmless if the defendant participated in both conspiracies. United States v. Noble, 754 F.2d 1324, 1330 (7th Cir.), cert. denied, 474 U.S. 818, 106 S.Ct. 63, 88 L.Ed.2d 51 (1985); United States v. Chamley, 376 F.2d 57, 60 (7th Cir.), cert. denied, 389 U.S. 898, 88 S.Ct. 221, 19 L.Ed.2d 220 (1967). Accordingly, if any variance existed at all, it was harmless.
 
 
 24
 E. Jury Instruction on Multiple Conspiracy Theory
 
 
 25
 Both Marshall and Elliot argue on appeal that the district court erred in failing to instruct the jury on the issue of multiple conspiracies regarding Count I. They contend that the failure of the trial court to instruct the jury concerning multiple conspiracies was reversible error in this case. When considering error in the trial court's instructions, we examine the jury instructions as a whole. United States v. Durades, 929 F.2d 1160, 1167 (7th Cir.1991). The issue is whether the evidence warranted an instruction on multiple conspiracies. United States v. Mazzanti, 888 F.2d 1165, 1174 (7th Cir.1989); United States v. Towers, 775 F.2d 184, 189 (7th Cir.1985). The evidence must be viewed in the light most favorable to the government. Mazzanti, 888 F.2d at 1174 (quoting Towers, 775 F.2d at 189). If the defendants joined together to further one common design or purpose, a single conspiracy exists. Id.; United States v. Kendall, 665 F.2d 126, 136 (7th Cir.1981), cert. denied, 455 U.S. 1021, 102 S.Ct. 1719, 72 L.Ed.2d 140 (1982). In determining whether a single or multiple conspiracy existed, we must look to the nature of the agreement. Mazzanti, 888 F.2d at 1174.
 
 
 26
 It is clear from the evidence presented at trial that Marshall and Elliot had joined together for the common design and purpose to possess with the intent to distribute cocaine. That part of the cocaine was possessed in the form of crack cocaine rather than powder cocaine simply does not warrant a multiple conspiracy instruction in this case. As long as the conspiracy continues toward its goal to achieve a common objective, it remains a single conspiracy despite the fact that participants may change or perform different roles or functions at different times. See United States v. Sababu, 891 F.2d 1308, 1332 (7th Cir.1989). United States v. Dennis, 917 F.2d 1031 (7th Cir.1990), which Elliot cites, is distinguishable in that no connection was there shown between the three co-conspirators. The evidence in this case clearly shows a common design and purpose between Marshall and Elliot. Moreover, there was no evidence presented by the defendants which suggests the existence of separate agreements. Also, the final instructions of the court informed the jury that it could convict the defendants of conspiracy only if it concluded that they were members of the various conspiracies as charged and separately considered. Accordingly, the district court did not err in failing to give a multiple conspiracy instruction.
 
 F. In Camera Inspection of Agent's Notes
 
 27
 Both defendants also argue that they were denied their right to confrontation of witnesses because they were not provided with copies of an agent's non-verbatim notes of the witnesses' pre-trial interviews. We review the district court's ruling denying the production of an agent's notes under an abuse of discretion standard. United States v. Allen, 798 F.2d 985, 993 (7th Cir.1986). The defendants argue that the court should have ordered production of Special Agent Hinkle's witness interview notes under the Jencks Act, 18 U.S.C. § 3500 et seq. Upon reasonable argument from counsel, there is a presumption that the court should conduct an in camera inspection of documents to determine whether the documents are producible under the Jencks Act. Allen, 798 F.2d at 995. The government suggests that this presumption can be overcome, however, if the prosecution articulates on the record why such an examination is unnecessary. Id. The government further argues that an in camera examination was unnecessary in this case because the court had the benefit of extrinsic evidence before it when it made its ruling, suggesting that the interview notes were a summary of oral statements (not verbatim accounts) and that they were never reviewed or adopted by the witnesses. An agent's summary of a witness' oral statement that is not signed or adopted by the witness is not subject to disclosure under the Jencks Act. Palermo v. United States, 360 U.S. 343, 352-53, 79 S.Ct. 1217, 1224-25, 3 L.Ed.2d 1287, reh'g denied, 361 U.S. 855, 80 S.Ct. 41, 4 L.Ed.2d 94 (1959).
 
 
 28
 According to the standard established in Allen, the district court erred by failing to conduct an in camera inspection of the interview notes to determine whether they were producible under the Jencks Act. The government's argument to the contrary is without merit. However, the district court's error in this case is harmless. Under Federal Rule of Criminal Procedure 52(a), any error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded. Since it is extremely unlikely that this error would either influence the jury or have more than a slight effect on the trial, reversal in this case is inappropriate. United States v. Johnson, 965 F.2d 460, 465 (7th Cir.1992); United States v. Shackleford, 738 F.2d 776, 783 (7th Cir.1984).
 
 III.
 CONCLUSION
 
 29
 For the reasons stated above and in accordance with the discussion above, the rulings of the district court are AFFIRMED.
 
 
 
 *
 The Honorable Hubert L. Will, Senior District Judge of the United States District Court for the Northern District of Illinois, Eastern Division, is sitting by designation