UNITED STATES of America, Plaintiff–Appellee,

v.

Janet K. HOLLAND, Defendant–Appellant.

No. 92–2830.

United States Court of Appeals, Seventh Circuit.

Argued April 6, 1993.

Decided April 29, 1993.

Rehearing and Rehearing In Banc Denied May 28, 1993.

Christina McKee, Asst. U.S. Atty., Office of the U.S. Atty., Indianapolis, IN (argued), for plaintiff-appellee.

James R. West, New Albany, IN, Belle T. Choate (argued), Katharine C. Liell, Indianapolis, IN, for defendant-appellant.

Before RIPPLE and MANION, Circuit Judges, and ENGEL, Senior Circuit Judge.[*]

RIPPLE, Circuit Judge.

Janet Holland was convicted by a jury on seventeen counts of knowingly making false statements to a federally insured financial institution for the purpose of influencing its actions, in violation of 18 U.S.C. §§ 1014 and 2. She was sentenced to twenty-four months' imprisonment and two years of supervised release. Ms. Holland now appeals her conviction. She contends that the evidence presented by the government was insufficient to convict her of the charged offenses and that her attorney at trial rendered ineffective assistance of counsel. For the reasons stated below, we affirm Ms. Holland's conviction.

I

BACKGROUND [1]

In 1975, Ms. Holland began working for the Bank of Versailles' branch office in Cross Plains, Indiana.[2] Ms. Holland was employed as a loan officer, vice-president, and manager of the branch. She also served on the bank's board of directors. Ms. Holland continued to hold these positions after the bank was purchased by the People's Trust Company in 1988. During the Bank of Versailles' tenure, Ms. Holland had authority as a loan officer to lend up to $10,000 on unsecured loans; this amount was increased to $25,000 after the bank's purchase by the People's Trust Company. Through her duties as the branch's only loan officer, Ms. Holland was conversant with the loan policies and procedures of the bank. She was also knowledgeable about agricultural loans.

Terry Griffith was one of Ms. Holland's customers. He had obtained agricultural loans from the Cross Plains branch and had dealt with Ms. Holland in his transactions there. She handled his farm account and gave him financial advice about his farm operations. In the spring of 1988, Griffith went to Ms. Holland for additional agricultural loans. She informed him that he had reached his credit limit and that she could not, therefore, extend him any more direct loans. Griffith stated that Ms. Holland told him that there was another way, albeit an illegal one, in which he could obtain the money he needed to keep his land in production. Ms. Holland suggested that he take out notes using false names or names of people who had not given permission for their names to be used, and then quickly pay back the loans when his crops were harvested and sold. This scheme would make it appear that third parties had taken out the loans for the benefit of Griffith; bank records, therefore, would not reflect that Griffith was actually the borrower and that he had gone beyond his credit ceiling. Griffith agreed to the plan.

From May 1988, through June 1989, Ms. Holland approved approximately thirty-five

---

[*] The Honorable Albert J. Engel, Senior Circuit Judge for the United States Court of Appeals for the Sixth Circuit, is sitting by designation.

1. As discussed *infra*, because Ms. Holland is challenging the sufficiency of the evidence, we must view the evidence in the light most favorable to the government. Thus, in this background section, we have relied upon the version of events as related by the government's witnesses at trial.

2. During the time period in question, deposits made to the bank were federally insured.

loans for Griffith in seventeen different names. Griffith would come into the bank when he needed a loan and go to Ms. Holland's office where she would give him loan applications and tell him what names to put on them. Griffith signed the names on the applications and together they filled in the rest of the form, writing in social security numbers, addresses, and listing collateral. Ten of the seventeen applications at issue were completed in Ms. Holland's handwriting. Griffith stated that he never took any of the loan applications out of the bank; he signed them all in Ms. Holland's office. Under her direction, he disguised his handwriting. Ms. Holland also suggested that Griffith rent a post office box. Notices regarding the loans could be sent to that address so that Ms. Holland and Griffith would be able to exercise some control over them.

On June 20, 1989, the scheme unraveled. The fraud was discovered when a loan officer at a People's Trust Company branch office in Madison, Indiana, notified a bank officer that numerous delinquent notices had been returned by the post office marked "addressee unknown" or "post office box closed."[3] The loan files relating to the notices were then scrutinized by a vice-president of the bank, and it was discovered that all of the proceeds of these loans had been deposited in Griffith's farm account. In total, over $182,000 was owed on the loans. Because Ms. Holland was the loan officer on the notes and had directed disbursement of the proceeds, she was questioned by bank officials, who had noticed the identical addresses listed on some of the loan documents. Although seventeen different names had been used on the applications, several addresses were used for more than one name. Griffith's post office box was listed for eight of the names, and the address of the Cross Plains bank was used for two of the names. Ms. Holland told the officials that the loan applicants were friends and relatives of Griffith.

On December 21, 1991, a grand jury indicted Ms. Holland on twenty-five counts of knowingly making false statements to a federally insured financial institution with the intent to influence its actions, in violation of 18 U.S.C. §§ 1014 and 2.[4] Eight of those counts eventually were dismissed and Ms. Holland was tried before a jury on the remaining seventeen counts. By the time of trial, Griffith had pleaded guilty to similar charges. Pursuant to his plea agreement, he testified against Ms. Holland. The jury convicted Ms. Holland on all seventeen counts, and she was sentenced to twenty-four months' imprisonment to be followed by two years of supervised release.[5]

Ms. Holland now appeals her conviction. She contends both that the government presented insufficient evidence to uphold her conviction under 18 U.S.C. § 1014 and that she was given ineffective assistance of counsel at trial.

## II

### ANALYSIS

A. *Sufficiency of the Evidence*

On appeal, a defendant challenging the sufficiency of the evidence upon which she was convicted bears a heavy burden. *United States v. Marshall*, 985 F.2d 901, 904 (7th Cir.1993). We review a challenge to the sufficiency of the evidence "in the light most favorable to the government to determine whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Id.* (quoting *United States v. Tanner*, 941 F.2d 574, 586 (7th Cir.1991), *cert. denied*, ____ U.S. ____, 112 S.Ct. 1190, 117 L.Ed.2d 432 (1992)). Viewing the evidence presented at trial and

---

**3.** Griffith had rented the post office box for one year. Because he did not renew the rental, mail became undeliverable to that address after May 31, 1989. Tr. II at 29, 68.

**4.** 18 U.S.C. § 2(a) states that "[w]hoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal."

**5.** The eight counts dismissed prior to trial charged Ms. Holland with making false statements on loans for a second borrower, Benny Adams. Adams was also charged in the scheme and pleaded guilty. At Ms. Holland's sentencing hearing, the amount of money she loaned to Adams was included under U.S.S.G. § 1B1.3 for purposes of calculating her offense level. Ms. Holland does not allege any error in the calculation of her sentence.

drawing all reasonable inferences from that evidence in the light most favorable to the government, we conclude that ample evidence exists from which a jury could find Ms. Holland guilty on all seventeen counts charged in the indictment.

An individual violates 18 U.S.C. § 1014 if she

knowingly makes any false statement or report, or willfully overvalues any land, property or security, for the purpose of influencing in any way the action of ... any institution the accounts of which are insured by the Federal Deposit Insurance Corporation ... upon any application, ... commitment, or loan, or extension of any of the same....

Although the statute does not specifically state that materiality is to be considered, courts nevertheless have held that materiality of the false statement is also an element of the offense. *United States v. Staniforth*, 971 F.2d 1355, 1358 (7th Cir.1992); *United States v. Shriver*, 842 F.2d 968, 976–77 (7th Cir. 1988).

Ms. Holland's main contention on appeal is that the government did not provide sufficient evidence to prove beyond a reasonable doubt that she knew the information in the loan applications was false. At trial, Ms. Holland claimed that Griffith had provided all of the loan information to her, that he had taken the applications out of her office to be signed by the borrowers, and that she had never seen him sign a name other than his own on the applications. She also noted that she had made no attempt to conceal the paper trail left by the loan process and that she had received no monetary benefit from the loans. Thus, to a large extent, the outcome of the trial depended on witness credibility. The jury had to weigh Ms. Holland's version of events against Griffith's version. Ms. Holland contends that Griffith's testimony alone is insufficient to prove that she knew the statements made in the loan applications were false. At oral argument, Ms. Holland's counsel stated that this case hinges on whether Griffith's testimony is believable.

It is well-settled that questions of credibility are within the province of the jury, and it is not this court's function to reassess a jury's credibility determination. *United States v. Neely*, 980 F.2d 1074, 1087 (7th Cir.1992). Absent extraordinary circumstances, we leave the credibility of witnesses solely to the jury's evaluation. *United States v. Olson*, 978 F.2d 1472, 1478 (7th Cir.1992), *cert. denied*, — U.S. —, 113 S.Ct. 1614, 123 L.Ed.2d 174 (1993). The jury here chose to believe Griffith's version of events and we find no reason to discount that evaluation.[6]

Moreover, Griffith's testimony was not the sole evidence presented by the government against Ms. Holland. The loan files at issue contained numerous examples of identical addresses used for different borrowers' names. We take particular note of the fact that Griffith's post office box address was used for many of the names and that the address of the Cross Plains bank was used twice. The loans were made over the course of approximately one year; all were approved by Ms. Holland; and ten of the applications were in her own handwriting. Based on this evidence, a jury could reasonably infer that Ms. Holland's failure to question the use of the addresses, especially the use of her own bank's address, demonstrates that she knew the loan applications contained untrue statements.

Furthermore, several of the loans were disbursed in such a way that the true amount of each loan was obscured. On these loans, Ms. Holland cut two checks, one in a small amount and a second in a significantly larger amount. The reports on new loans sent to the bank's board initially reflected only the first disbursement. Tr. I at 132. The bank's senior vice-president, Elaine Young, testified that this method allowed the larger check to escape notice. *Id.* Additionally, on one occasion, Ms. Holland disbursed the proceeds of a loan before the loan application had been processed. *Id.* at 134. On that particular loan, the proceeds were used to buy a cashier's check made out to Griffith, endorsed in Ms. Holland's handwriting, and deposited in

---

6. We also note that the jury was given a cautionary instruction regarding Griffith's testimony because he had pleaded guilty to offenses arising out of the same events for which Ms. Holland had been charged.

Griffith's farm account. *Id.* The loan application was processed the next day. Thus, considering all of the evidence in the light most favorable to the government, we must conclude that there was sufficient evidence upon which a jury could convict Ms. Holland.[7]

### B. *Ineffective Assistance of Counsel*

A defendant also bears a heavy burden in proving that her trial attorney rendered ineffective assistance of counsel. *United States v. Guerrero*, 938 F.2d 725, 727 (7th Cir.1991). A conviction will be reversed for ineffective assistance of counsel only if the defendant satisfies the test set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *Marshall*, 985 F.2d at 906. This test consists of two prongs: a defendant must show that (1) counsel's representation fell below an objective standard of reasonableness and (2) that this deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064. Under the second prong of *Strickland*, "the reviewing court must decide whether counsel's performance prejudiced the defendant such that it rendered the proceeding fundamentally unfair or made the result unreliable." *Hollenback v. United States*, 987 F.2d 1272, 1275 (7th Cir.1993) (citing *Lockhart v. Fretwell*, — U.S. —, —, 113 S.Ct. 838, 844, 122 L.Ed.2d 180 (1993)).

Ms. Holland contends that, among other alleged errors, her trial counsel exhibited a lack of knowledge of proper trial procedure that caused the court to "coach" him at various points during trial. Ms. Holland specifically notes that her trial counsel experienced difficulty in making a motion for judgment of acquittal at the close of the government's case and in examining and cross-examining several of the witnesses. Additionally, Ms. Holland states that trial counsel elicited testimony prejudicial to her interests and failed to move to strike allegedly damaging, unre-

sponsive testimony. Finally, Ms. Holland contends that her counsel provided ineffective assistance because he failed to request a jury instruction stating that there was a presumption that Ms. Holland, as a loan officer, had been authorized to make the loans to Griffith.

Even if we were to determine that counsel's performance was substandard, we do not believe Ms. Holland has satisfied the second prong of the *Strickland* test, as clarified by *Lockhart*. After reviewing the record, we conclude that none of the alleged errors cited in her brief rendered Ms. Holland's trial fundamentally unfair or made her conviction unreliable. *See Hollenback*, 987 F.2d at 1275. Despite Ms. Holland's contentions, there was no prejudice because counsel was able to elicit helpful witness testimony and also was able to cross-examine effectively the government's witnesses. In regard to counsel's failure to ask for a jury instruction on Ms. Holland's authorization to make these loans to Griffith, we agree with the government that such an instruction was not supported by the evidence and thus Ms. Holland was not prejudiced by its absence.

Therefore, we believe that ample evidence exists to prove that Ms. Holland knowingly made false statements on loan applications for the purpose of influencing the bank to make loans that otherwise could not have been approved. Furthermore, Ms. Holland has not demonstrated that any of the alleged errors made by her trial counsel prejudiced her case. Accordingly, we cannot conclude that the proceedings were unfair or that her conviction was unreliable.

### Conclusion

For the foregoing reasons, we affirm Ms. Holland's conviction.

AFFIRMED.

---

7. Ms. Holland also contends that for purposes of 18 U.S.C. § 2, the government did not prove beyond a reasonable doubt that Ms. Holland shared Griffith's intent to influence the bank's actions by completing false loan applications. Furthermore, she asserts that the government failed to show that she acted outside the scope of her authority to approve loans because she did not know the information provided was false. Based on the same evidence noted above, we conclude that these arguments, too, must fail.