**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Rosa Motaka LEWIS, Defendant–
Appellant.**

No. 93–5772.

United States Court of Appeals,
Fourth Circuit.

Argued June 9, 1994.

Decided Sept. 19, 1994.

**ARGUED:** Justin Michael Miller, Jacobovitz, English & Smith, Alexandria, VA, for appellant. Nancy Silverman, Sp. Asst. U.S. Atty., Alexandria, VA, for appellee. **ON BRIEF:** Helen F. Fahey, U.S. Atty., Alexandria, VA, for appellee.

Before HALL, MURNAGHAN, and NIEMEYER, Circuit Judges.

## OPINION

K.K. HALL, Circuit Judge:

A jury found Rosa M. Lewis guilty of three counts of making false statements to the Department of Housing and Urban Development (HUD), in violation of 18 U.S.C. § 1001.[1] The indictment alleged that from 1988 to 1991, Lewis thrice failed to list her work income on recertification forms used by HUD to ascertain continued eligibility for rent subsidies. The sole issue before us is whether the government's failure to turn over HUD's entire investigatory report to Lewis in response to her Jencks Act[2] request necessitates reversal of her conviction. We hold that it does not.

### I.

The report, compiled by HUD's Office of Inspector General (OIG), is approximately one hundred twenty pages long. The first part of the report contains transcribed summaries of nine interviews conducted by the OIG agents in charge of the investigation. Special Agents Jerry C. Gilbert and Danny Michelle Barbat jointly conducted the first two interviews contained in the report—those of Lewis herself and of Cherrie French, resident manager of the apartment complex where Lewis resides; the summary of each interview fills slightly more than one single-spaced, typewritten page.

The other interviews were conducted by Barbat alone. Six of those interviewed were Lewis's former co-workers or supervisors; the other was a loan specialist in HUD's field office, contacted to estimate HUD's loss in

---

1. Section 1001 provides that

    Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000 or imprisoned not more than five years, or both.

2. 18 U.S.C. § 3500.

excess subsidies paid to Lewis. None of these summaries are longer than a few sentences. The remaining one hundred pages or so of the report consist almost entirely of Lewis's personnel records and the recertification forms that Lewis had signed.[3]

In preparation for trial, Lewis moved for discovery pursuant to Fed.R.Crim.P. 16(a). With regard to the OIG report, the government provided only the pages numbered 5 and 6—the summary of the agents' interview with Lewis. At a pretrial hearing, counsel for Lewis argued that the government had not complied with the district court's standing order to produce all Jencks Act materials prior to trial.[4] The court declined to order the government to produce the rest of the report, and it rejected defense counsel's suggestion to examine the report *in camera.*[5] The case proceeded promptly to trial. Barbat, Lewis, French, and John Miles—another of the Barbat interviewees—all testified.

## II.

Rule 16(a) specifies the evidence that the government must, upon request, provide to the defendant prior to trial. Though much of the government's evidence is subject to disclosure under Rule 16(a), the rule "does not authorize the discovery or inspection of reports ... made by ... government agents in connection with the investigation or prosecution of the case." Fed.R.Crim.P. 16(a)(2). According to the rule, nothing contained in the OIG report would ordinarily have been discoverable by Lewis.

However, Rule 16(a) also provides that "the government shall disclose to the defendant ... that portion of any written record containing the substance of any relevant oral statement made by the defendant whether before or after arrest in response to interrogation by any person then known to the defendant to be a government agent." Fed. R.Crim.P. 16(a)(1)(A). The government dutifully complied with this requirement by providing the agents' summary of their interview with Lewis, though the summary was, at least technically, part of the OIG report. Up to this point, no error had been committed.

The problems started when the government tried to comply with the district court's standing order that it produce all Jencks Act material *prior* to trial. Such an order is plainly inconsistent with the language of the Act:

In any criminal prosecution brought by the United States, no statement or report in

---

3. The personnel records track Lewis's employment with various federal government agencies, and provide detail regarding her responsibilities and performance at each job. They were compiled pursuant to a background check initiated by the Department of Defense (DOD) when Lewis requested a transfer to the DOD's Defense Mapping Agency. The check led to the discovery of the HUD overpayments. Lewis filled out a Personnel Security Questionnaire (PSQ) and authorized the DOD to conduct the background check. The DOD's findings, its referral to HUD, and the PSQ constitute the small portion of the last one hundred pages of the OIG report that is not merely documentary evidence.

4. Counsel argued that, because Agent Barbat was scheduled to testify for the government, the whole report was Jencks material as to her. At that point, counsel was unaware of what constituted the "whole report." Though he could be certain that pages 1–4 were missing, he could not know whether those pages contained any statements of Agent Barbat to which the Jencks Act might apply. His argument necessarily assumed that the rest of the report, however long it was, consisted of additional summaries or other statements that Barbat had adopted.

The government's response appeared to vindicate defense counsel's assumption. The government acknowledged that "[t]he remainder of the report was separate accounts ... in her own words of what had transpired in interviews with other [witnesses]." The court then asked the government whether the accounts were Jencks Act material. The government responded that, though some of the witnesses interviewed might testify, the agents' accounts of those interviews were not subject to the Jencks Act because the accounts had not been adopted by the witnesses. However, the government then conceded that "[t]hose interviews *are* Jencks as to the agents."

Indeed, when a testifying government agent has prepared a formal report intended to be communicated to others, such a report may be discoverable as the agent's statement. *United States v. Hinton,* 719 F.2d 711, 721 (4th Cir. 1983), *cert. denied,* 465 U.S. 1032, 104 S.Ct. 1300, 79 L.Ed.2d 699 (1984).

5. Prior to oral argument, we granted the government's unopposed motion to make the report part of the record on appeal.

the possession of the United States which was made by a Government witness or prospective Government witness (other than the defendant) shall be the subject of ... discovery ... or inspection *until said witness has testified on direct examination in the trial of the case.*

18 U.S.C. § 3500(a) (emphasis supplied). The district court may not require the government to produce Jencks Act material relating to one of its witnesses until *after* the witness has testified. *See United States v. Peterson,* 524 F.2d 167, 175 (4th Cir.1975), quoting *United States v. Harris,* 458 F.2d 670, 679 (5th Cir.1972) ("a Jencks Act request is wholly inappropriate in a pretrial motion for discovery"), *cert. denied,* 423 U.S. 1088, 96 S.Ct. 881, 47 L.Ed.2d 99 (1976) *and* 424 U.S. 925, 96 S.Ct. 1136, 47 L.Ed.2d 334 (1976); *see also United States v. White,* 750 F.2d 726, 729 (8th Cir.1984); *United States v. Algie,* 667 F.2d 569, 571 (6th Cir.1982) (collecting cases).

Of course, nothing in the Jencks Act prevents the government from voluntarily disclosing covered material prior to trial, as it apparently agreed to do here. We prefer to encourage such early disclosures. In fact, we believe that both sides benefit when the government's file is completely open to a criminal defendant.

In this case, however, the government's file was not completely open; it produced only what it believed that it had to. It produced part of the OIG report—Lewis's prior statement—to comply with Rule 16(a)(1)(A). It maintained, however, that the Jencks Act did not compel further disclosure of the material contained therein because it did not relate to the subject matter of Barbat's expected testimony.[6]

At this point, the district court was required to examine the entire report:

If the United States claims that any statement ordered to be produced under this section contains matter which does not relate to the subject matter of the testimony of the witness, the court *shall* order the United States to deliver such statement for the inspection of the court in camera. Upon such delivery the court shall excise the portions of such statement which do not relate to the subject matter of the testimony of the witness.

18 U.S.C. § 3500(c) (emphasis added). *See United States v. Marshall,* 985 F.2d 901, 908 (7th Cir.), *cert. denied,* — U.S. —, 113 S.Ct. 2445, 124 L.Ed.2d 662 (1993) *and* — U.S. —, 114 S.Ct. 102, 126 L.Ed.2d 69 (1993). The difficulties of requiring pretrial disclosure of Jencks Act material should be apparent from the above language. Where there is no open file policy and a disagreement subsequently develops over whether a statement relates to the witness's testimony on direct examination—and thus must be produced under the Jencks Act—it is impossible for the district court to intelligently resolve the issue until *after* the witness has testified at trial.

At the trial of this case, Agent Barbat's direct testimony focused on Lewis's interview. Barbat testified that Lewis told the agents that she had been receiving rent subsidies since 1987, that she had been employed during that period, and that she had not reported her employment income on the recertification forms because a former manager at the apartment complex had told her that she was not required to report income from part-time employment of less than $22,000 per year. According to Barbat, Lewis also told the agents that a subsequent man-

---

**6.** Subsection (b) of the Jencks Act states that After a witness called by the United States has testified on direct examination, the court shall, on motion of the defendant, order the United States to produce any statement ... of the witness in the possession of the United States which relates to the subject matter as to which the witness has testified....
18 U.S.C. § 3500(b). Thus, the Jencks Act requires the government to produce material in its possession that is (1) a statement, (2) made by the witness, that (3) relates to the subject matter of the witness's testimony. In this case, the government conceded that the whole OIG report was "Jencks as to the agents," *see* note 4, *supra,* yet the government declined to produce it. Though the record does not clearly indicate the government's rationale for its position, the only logical way to reconcile the government's words with its actions is to conclude that it believed that the report did not satisfy the third criterion.

ager, Thomas Murray, had never advised her that she had to report such income.[7]

The subject matter of Agent Barbat's testimony is fairly characterized as (1) the interview with Lewis, (2) Lewis's relationship with the management of the apartment complex, and (3) the nature of Lewis's employment and her compensation during the relevant time period.[8] Had the district court examined the OIG report *in camera* following Barbat's testimony, it would have discovered the summaries of her interviews of French (the manager of the apartment complex at the time of the investigation) and of Miles and one other person who worked alongside Lewis during the time periods alleged in the indictment. Although the summaries of these interviews may not have been "relevant" in the sense that Barbat could be impeached by anything contained in them, they did at least "relate to" the subject matter of her testimony. The court thus should have ordered the government, after Barbat had testified, to provide the OIG report, redacted to contain only those three summaries relating to the subject matter of her testimony.

### III.

 The district court's error, however, was unquestionably harmless, precisely *because* the statements merely "related to" the subject matter of Barbat's testimony; nothing in the withheld summaries could remotely be said to have the slightest impeachment value. Lewis apparently agrees, choosing instead to argue that the impeachment value of the withheld summaries lay, not in what they contain, but in what they do *not* contain.

Agent Barbat testified before the grand jury that, after interviewing Lewis and hearing her mention that Murray had never given her any affirmative direction regarding part-time income, she contacted Murray to cor-

roborate Lewis's story. Notwithstanding Barbat's grand jury testimony, there is no indication in the OIG report that Barbat ever talked to Murray. Had Lewis's counsel possessed this information prior to cross-examining Barbat, the argument goes, his cross-examination would have been more effective.

We disagree. Counsel's exhaustive cross-examination of Barbat was extremely effective. As it happened, Barbat had testified in Lewis's case before two different grand juries. During Barbat's cross-examination at trial, defense counsel effectively pointed out inconsistencies in the two versions of her grand jury testimony, particularly with regard to Murray. As a result, we believe that Barbat's credibility with the trial jury was damaged. We do not see how it could have been damaged further had the jury known that no record of Barbat's interview of Murray appeared in the OIG report.

We are cognizant that "the harmless error doctrine must be strictly applied in Jencks Acts cases." *Goldberg v. United States,* 425 U.S. 94, 111 n. 21, 96 S.Ct. 1338, 1348 n. 21, 47 L.Ed.2d 603 (1976). Ordinarily, whether Jencks material could have been effectively used at trial is, initially, a matter for the district court. *See United States v. Truong Dinh Hung,* 629 F.2d 908, 920–21 (4th Cir.1980). We are nevertheless satisfied that, in this case, remand would be a futile exercise. The judgment of the district court is affirmed.

*AFFIRMED.*

---

**7.** No rule exists to the effect that such income need not be listed on a HUD recertification form. In essence, Lewis's defense was that she did not comprehend the details of what she had signed, but instead relied on the supposed expertise of the apartment complex management. She testified that the management filled out the HUD forms each year and then slid them under her door for her to sign. In any event, the evidence at trial established that Lewis was employed in full-time positions during the relevant time periods.

**8.** The government also decided to use Agent Barbat to introduce copies of Lewis's federal income tax returns. However, as there is no tax information contained in the OIG report, this portion of Barbat's testimony is irrelevant to our analysis.