**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Joseph V. NASH, Defendant–Appellant.**

Nos. 91–50760, 92–50310, 92–50374 and 93–50694.

United States Court of Appeals,
Ninth Circuit.

Submitted * July 6, 1994.

Submission Vacated Dec. 21, 1994.

Resubmitted Aug. 17, 1995.

Decided Aug. 24, 1995.

---

* This panel unanimously agrees that this case is appropriate for submission without oral argu-ment. Fed.R.App.P. 34(a); 9th Cir.R. 34–4.

Joseph V. Nash, Los Angeles, CA, pro se.

Carolyn J. Kubota and Dorothy Shubin, Asst. U.S. Attys., Los Angeles, CA, for plaintiff-appellee.

Before: FLETCHER, CANBY, and HALL, Circuit Judges.

CYNTHIA HOLCOMB HALL, Circuit Judge:

Joseph V. Nash appeals his convictions of bank fraud in violation of 18 U.S.C. § 1344 and making false statements to a federally insured lending institution in violation of 18 U.S.C. § 1014. The district court had jurisdiction pursuant to 18 U.S.C. § 3231, and this court has jurisdiction pursuant to 28 U.S.C. § 1291. We reverse in part and affirm in part.

## I. FACTS AND PROCEEDINGS BELOW

Nash was charged in a fifteen-count superseding indictment. Counts 1 through 4 charged Nash with submitting false tax returns to Liberty National Bank in violation of 18 U.S.C. § 1014. Nash's partnership, Nash & Company, applied to Liberty National for a $250,000 line of credit and a $250,000 loan, each of which Nash offered to guarantee personally. As part of the application process, Nash submitted his personal income tax returns for 1985 and 1986. The indictment alleged that these returns "greatly overstated [Nash's] income for [those] year[s]" and that relying in part on the contents of these documents Liberty National granted Nash & Company the loan and the line of credit. Nash also submitted these allegedly false tax returns to First Pacific Bank to obtain a $200,000 unsecured personal loan. This conduct formed the basis of counts 5

and 6, also charging Nash with violating 18 U.S.C. § 1014.

Counts 7 through 9 charged Nash with a scheme that began in 1985. Nash was the president and owner of First Professional Realty Company of America, Inc. In January 1985, he obtained for First Professional a $250,000 loan from Union Bank. First Professional held a promissory note from another business called TAG Properties (TAG). As of January 1985, the note obligated TAG to make three payments to First Professional of $450,000 each. To obtain the loan, Nash represented to Union Bank that First Professional would repay the loan with the future installments on this note. Union Bank, in an effort to ensure its right to receive the proceeds, requested that Nash give the TAG promissory note to it for safekeeping. Nash gave Union Bank a document which he incorrectly represented as the TAG note.

When Nash was later unable to repay the loan, he sought and received three extensions from Union Bank. The extensions that he received in December 1986 and June 1987 were granted in reliance upon Nash's representation that Union Bank would receive the remaining amount due when TAG made its December 16, 1987 payment to First Professional. What Union Bank did not know, however, was that TAG had paid the note in full on or about January 20, 1986. It was alleged that Nash was aware of this final payment when he sought the extension. These activities form the basis of the bank fraud charged in Count 7 of the indictment. Counts 8 and 9 charged Nash with giving false statements to the bank, consisting of the December 1986 and June 1987 misrepresentations.

Nash received one other loan during this period. In September 1986, Nash applied to Great Western Bank for a $4,360,000 loan secured by an office building he owned in Beverly Hills. He represented to Great Western that the property was fully leased and would generate enough rent to repay the loan. In support of this claim, Nash submitted two seemingly genuine lease agreements. One lease showed Revel Travel as leasing the first floor of the Beverly Hills property for

$20,340 per month. In reality, Revel Travel was paying only $10,500 per month. The other lease stated that McMurtry & Bell, an insurance company, was leasing the entire second floor of the Beverly Hills property for $20,093 per month until February 1, 1988. In reality, the insurance company was leasing on a month-to-month basis and paid only $2000 per month. Nash obtained the loan from Great Western and in return assigned to Great Western the lease proceeds from the Beverly Hills property. This conduct gave rise to counts 10 through 15 of the indictment. Counts 10 through 13 each charged Nash with bank fraud based on the loan application, the security agreement between Nash and Great Western, the promissory note between Nash and Great Western, and the assignment of leases between Nash and Great Western. Counts 14 and 15 charged Nash with violations of 18 U.S.C. § 1014 based on the submission of the inaccurate Revel and McMurtry leases.

Nash was convicted on all fifteen counts of the superseding indictment.

## II. 18 U.S.C. § 1014 CONVICTIONS

Nash claims the district court erred when it instructed the jury that income and asset statements are material under 18 U.S.C. § 1014.

■ The government responds to Nash's claim by asserting that materiality is not an element of a § 1014 violation. Section 1014 provides:

[w]hoever knowingly makes any false statement or report ... for the purpose of influencing in any way the action of ... any institution the accounts of which are insured by the Federal Deposit Insurance Corporation, ... upon any application ... or loan, or any change or extension of any of the same, ... shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.

18 U.S.C. § 1014. Although the statute does not expressly require the false statements to be material, we have previously stated that materiality is an element of the offense. *United States v. Hutchison,* 22 F.3d 846, 851 (9th Cir.1993) (violation of § 1014 requires proof that defendant "made a knowing, false, *material* statement to the bank for the purpose of influencing its action") (emphasis added); *Theron v. United States Marshal,* 832 F.2d 492, 496–97 (9th Cir.1987) (essential elements of § 1014 violation include knowingly making a "false statement as to a material fact," where a fact is material if it "has the capacity to influence the lending institution"), *cert. denied,* 486 U.S. 1059, 108 S.Ct. 2830, 100 L.Ed.2d 930 (1988). Our circuit is not alone in taking this position. *See, e.g., United States v. Holland,* 992 F.2d 687, 690 (7th Cir.1993) ("[a]lthough the statute does not specifically state that materiality is to be considered, ... materiality of the false statements is also an element of the offense"); *United States v. Haddock,* 956 F.2d 1534, 1549 (10th Cir.), *cert. denied,* — U.S. —, 113 S.Ct. 88, 121 L.Ed.2d 50 (1992); *United States v. Thompson,* 811 F.2d 841, 844 (5th Cir.1987).

■ The jury instructions given in this case followed this approach and required the government to prove materiality. The instructions, however, advised the jury that "false statements of income and assets are material for purposes of these instructions." [1] In light of recent Supreme Court precedent, it is now clear that this instruction was erroneous.

In *United States v. Gaudin,* — U.S. —, 115 S.Ct. 2310, 132 L.Ed.2d 444 (1995), the Supreme Court held that the question of materiality under 18 U.S.C. § 1001, another false statement statute, was a mixed question of law and fact for the jury, and not the court, to decide. *Id.* at — – —, 115 S.Ct. at 2314–20. The Court made clear that because materiality was an element of the of-

---

1. Other instructions seemingly advise the jury that it may decide the entire question of materiality. At best, these additional instructions render the instructions as a whole ambiguous and thus

they do not remedy the problem created by the instruction quoted in the text. *United States v. Washington,* 819 F.2d 221, 226 (9th Cir.1987) ("a

fense,[2] and because defendants have a right to have all elements proved to the jury beyond a reasonable doubt, it was error to take the resolution of this particular element away from the jury. *Gaudin's* reasoning appears to admit of no exception that would suggest that materiality under § 1014 is nonetheless a question of law. We therefore hold that the district court erred in instructing the jury that false statements of income and assets were material as a matter of law.

 Because Nash did not object to the instruction in dispute, our review is for plain error. *See United States v. Kessi*, 868 F.2d 1097, 1102 (9th Cir.1989). However, "[w]hen a defendant has not been accorded his Fourth and Sixth Amendment rights to a jury determination of the existence of an essential element of the crime, we conclude that the error meets that standard." *United States v. Gaudin*, 28 F.3d 943, 952 (9th Cir. 1994) (en banc), *aff'd*, ── U.S. ──, 115 S.Ct. 2310, 132 L.Ed.2d 444 (1995); *see also Gaudin*, ── U.S. at ──, 115 S.Ct. at 2320 (Rehnquist, C.J., concurring) (on appeal to the Supreme Court, government did not challenge Ninth Circuit holding that instructional error "was structural and plain"). We therefore have the discretion to correct the error, *see Gaudin*, 28 F.3d at 952 (citing *United States v. Olano*, ── U.S. ──, ── ── ──, 113 S.Ct. 1770, 1778–79, 123 L.Ed.2d 508

(1993)), and feel compelled to exercise that discretion. Accordingly, we reverse the convictions on counts 1 through 6,[3] 8, 9, 14 and 15 and remand for further proceedings consistent with this opinion.[4]

## III. BANK FRAUD

### A. MULTIPLICITY

 Nash contends and the government concedes that Counts 10 through 13 arising from the Great Western loan are multiplicitous. *See United States v. Molinaro*, 11 F.3d 853, 860 (9th Cir.1993) ("the unit of the offense created by § 1344 is not each act in furtherance of a scheme to defraud but each execution or attempted execution of the scheme to defraud"), *cert. denied*, ── U.S. ──, 115 S.Ct. 668, 130 L.Ed.2d 602 (1994). Nash claims that the remedy for this error is a new trial. Even if we were to assume that upon a finding of multiplicity such a remedy might ever be warranted, this appeal is not an appropriate candidate for such relief because the government would have introduced exactly the same evidence had the indictment contained only one count of bank fraud relating to the Great Western loan. *See United States v. Lilly*, 983 F.2d 300, 305 (1st Cir. 1992).

 Nash claims alternatively that resentencing is required. The government re-

---

conviction should not rest on ambiguous and equivocal jury instructions on a basic issue").

2. In fact, the Court in *Gaudin* assumed without deciding, on the basis of a concession by the government, that materiality was an element of a § 1001 violation. *See Gaudin*, ── U.S. at ──, 115 S.Ct. at 2313; *id.* at ──, 115 S.Ct. at 2320 (Rehnquist, C.J., concurring). In light of our holding, above, that materiality is in fact an element of the government's case in a § 1014 prosecution, *Gaudin's* reasoning on the apportionment of tasks between the judge and jury applies fully to the present case.

3. We reject, however, Nash's contention that there was insufficient evidence to support his convictions on counts 1 through 6.

4. The government argues that Nash's § 1014 convictions as to Union Bank and Great Western should stand even if this panel concludes that materiality is a question for the jury because Nash was also convicted of § 1344 as to those

institutions. The jury was instructed that to convict Nash of bank fraud it must find that he made a false statement "of a kind that would reasonably influence the financial institution in question to part with money or property." For the § 1014 violations, the jury was instructed that the false statement must have been material and that "[a] statement is material for purposes of § 1014 if it has the capacity to influence a decision of the bank." The government is correct that a finding that a statement satisfies § 1344 would necessarily mean that the statement satisfies § 1014. However, we cannot be sure which statements the jury relied upon as the basis of the § 1344 convictions. The jury was instructed that "[i]t is enough if you find beyond a reasonable doubt that with respect to each alleged bank fraud scheme at least one such false representation was made, with all of you agreeing on which one, and that the number of false representations provided is sufficient to establish the existence of the scheme to defraud." Thus, we are unable to affirm on the basis that the jury must have found the statements that Nash made were material and necessarily found all the elements of § 1014.

sponds that resentencing is unnecessary because the sentences on counts 10 through 13 are concurrent.

In another appeal involving similar facts we did indeed instruct the district court that "a sentence can be imposed on each [multiplicitous] count but must run concurrently with every other sentence on a [multiplicitous] count." *Molinaro*, 11 F.3d at 864. Hence we would agree with the government if its factual premise was accurate, but it is not. The district court imposed a $50 special assessment on each of these counts.[5] Since Nash's "liability to pay this total depends on the validity of each of his ... convictions, the sentences are not concurrent." *Ray v. United States*, 481 U.S. 736, 737, 107 S.Ct. 2093, 2094, 95 L.Ed.2d 693 (1987) (per curiam). The district court sentenced Nash to a total of ten years imprisonment on the four § 1344 counts. Because he has not yet served the totality of this sentence, we remand counts 10 through 13 to the district court for resentencing consistent with this opinion.

## IV. THE TRIAL

### A. PROSECUTORIAL MISCONDUCT

 Nash argues that the prosecutors impermissibly vouched for government witnesses when they stated that those witnesses had no motive to lie. The prosecutors' statements, however, were simply inferences from evidence in the record. They were not references to extra-record facts or personal guarantees of the witnesses' veracity. *United States v. Necoechea*, 986 F.2d 1273, 1279 (9th Cir.1993); *see also United States v. Molina*, 934 F.2d 1440, 1445 (9th Cir.1991) ("prosecution must have ... freedom to argue reasonable inferences based on the evidence"). The prosecutor's statement that Nash lied during his testimony is also a proper basis for gov-

ernment argument. *See Molina*, 934 F.2d at 1445 ("proper for the government to argue that the jury ought not to believe the appellant's version"). We conclude that the government did not vouch or impermissibly question Nash's veracity.

### B. EXCLUSION OF EVIDENCE

Nash contends the district court erred in restricting evidence of repayment on counts 7 through 15 (the Union Bank and Great Western loans). The record reflects that Nash did introduce evidence of repayment and Nash has not specifically identified any evidence that was excluded. His contention is without merit.

### C. TRIAL COURT BIAS

 Nash argues that the district court evidenced a bias that projected to the jury an appearance of partiality. "A federal judge has broad discretion in supervising trials, and his or her behavior during trial justifies reversal only if it abuses that discretion. A trial judge is more than an umpire, and may participate in the examination of witnesses to clarify evidence, confine counsel to evidentiary rulings, ensure the orderly presentation of evidence, and prevent undue repetition." *United States v. Laurins*, 857 F.2d 529, 537 (9th Cir.1988) (citations omitted), *cert. denied*, 492 U.S. 906; 109 S.Ct. 3215, 106 L.Ed.2d 565 (1989). Nash's assertions are unsupported by the record. The trial judge's conduct fell completely within the discretion accorded him to supervise the trials in his court.

## V. POST TRIAL REQUEST FOR NEW COUNSEL

Nash claims the district court denied his post trial request for new counsel or alterna-

---

5. The judgment and commitment order describes the sentences on counts 10 through 13 as running concurrently. The sentencing transcript describes the sentences on counts 10 and 11 as concurrent to each other and the sentences on counts 12 and 13 as concurrent to each other but states that the sentences on counts 12 and 13 shall run consecutively to the sentences on counts 10 and 11. We note that Nash's total sentence of 11 years comports with the sentence described in the judgment and not the sentence as it is set forth in the sentencing transcript.

Nevertheless, " '[t]he only sentence that is legally cognizable is the actual oral pronouncement in the presence of the defendant.' " *United States v. Bergmann,* 836 F.2d 1220, 1221 (9th Cir.1988) (citation omitted). Because we find the sentences are not concurrent even as they are described in the judgment, we need not consider the many issues raised by the inconsistency between the transcript and the judgment.

tively to proceed pro se. Once again, however, Nash mischaracterizes the facts. The district court specifically did *not* deny Nash's request for substitution of counsel. Rather, the district court initially declined to rule on the request until Nash thought his "way through on that and decide[d] what [he] want[ed] to do." Later, the district court granted Nash's request for substitution of counsel. There simply was no denial of a request for new counsel or to proceed pro se.

## VI. DISCLOSURE OF SEALED RECORDS

 Nash seeks disclosure of the grand jury testimony of a government witness, Agent Chamberlain, alleging that it constitutes Jencks and *Brady* material. A district court's denial of a motion to produce a witness' statement pursuant to the Jencks Act is reviewed for abuse of discretion. *United States v. Brumel–Alvarez*, 991 F.2d 1452, 1457 (9th Cir.1992). In Nash's request to unseal the grand jury documents, he alleges the grand jury testimony would have assisted him in impeaching Chamberlain. We have reviewed Chamberlain's testimony before the grand jury and it did not relate to her testimony at trial. The district court properly denied Nash's request for disclosure.

 Nash also seeks to have all documents unsealed. To the extent he is seeking release of all information surrounding the grand jury proceedings, he has failed to demonstrate particularized need which would overcome the policy of grand jury secrecy. *United States v. Procter & Gamble, Co.*, 356 U.S. 677, 683, 78 S.Ct. 983, 987, 2 L.Ed.2d 1077 (1958). To the extent he seeks any other documents that were filed under seal and not previously released, he has not identified them in his briefs on appeal. His motion before the trial court identified entries from the docket but it is impossible to identify any reason for disclosing those items. We conclude that Nash is not entitled to the disclosure of any of the documents he requests.

## VII. CONCLUSION

Because we reverse the § 1014 convictions, we need not reach the balance of the issues raised in Nash's appeal. We also note that the district court suspended imposition of the sentence on count 7. Because it appears that the district court attempted to structure a sentence of custody and probation based upon the multiple convictions, and the § 1014 convictions have now been reversed, the district court should be allowed to reconsider the sentencing on Count 7. *See United States v. Still*, 850 F.2d 607, 610 (9th Cir. 1988), *cert. denied*, 489 U.S. 1060, 109 S.Ct. 1330, 103 L.Ed.2d 598 (1989).

Thus, in sum, we reverse the convictions on Counts 1 through 6, 8, 9, 14 and 15 and remand for further proceedings consistent with this opinion. We reverse the sentences on Counts 10 through 13 and remand for resentencing consistent with this opinion. We also remand for resentencing on Count 7.

**REVERSED IN PART, AFFIRMED IN PART, REMANDED.** Nash's request for disclosure of documents is **DENIED.**